By the Court.
Ingraham, J.
The appellant presents but two grounds for the reversal of the judgment appealed from.
First, that the evidence failed to show a good title in plaintiff to the premises No. 234 Pearl street, being a portion of the premises described in the complaint.
It appears that this property belonged to a banking corporation known as “ The President, Directors and Company of the Seventh Ward Bank,” whose charter *414 expired on January 1, 1863. Just prior thereto, a banking corporation was formed under the general banking law to take the place of the said corporation, known as the “ Seventh Ward Bank.” By the articles of association, the president of the said Seventh Ward Bank was indicated as the officer to whom should be made conveyances of real estate belonging to the corporation, to take, hold and convey the same on behalf of the corporation. In pursuance of this provision the real estate in question which had been owned by the former corporation, and had been used by it for a banking house, was conveyed to “William Halsey, president of the said Seventh Ward Bank.”
The said Seventh Ward Bank was organized under chapter 260 of the Laws of 1838, and by section 24 of this act it was provided that “all conveyances of such real estate shall be made to the president, or such other officer as shall be indicated for that purpose in the articles of association, and which president or officer, and his successors, from time to time, may sell, assign, and convey the same free from any claim thereof against any of the shareholders or any persons claiming under them.”
On this conveyance to Halsey, I think it clear that the bank became the equitable owner of the property ; the legal title being in the president of the bank.
A deed was executed whereby “Alfred S. Frazer, the president of the Seventh Ward Bank in the city of New York, party of the first part,” conveyed to the plaintiff the property in question. That conveyance was properly executed and acknowledged as an act of the corporation and the seal of the corporation affixed.
The corporation being the equitable owner of the premises, I think this deed was sufficient to convey the equitable title of the property to the plaintiff, and the plaintiff, thus became the equitable owner of-the premises. The deed being executed by the bank, and properly acknowledged as an act of the bank, was admissible in evidence, and the plaintiff in the action being the equitable *415 owner of the premises, and being in possession, could maintain an action for trespass.
The second objection taken by the appellant is that the court allowed the plaintiff to recover for the depreciation of the rental value of the premises caused by the maintenance of the Elevated Railroad structure, and operation of the road from August 26, 1878, to May 1, 1882, during which period the plaintiff occupied the premises for its banking business.
The only evidence of damage caused by the structure complained of was the decrease in the rental value of the premises. The court charged the jury that “The question was whether the Elevated Railroad was indebted to the plaintiff, who is the owner of the premises in Pearl street, for rent for defendant’s use and occupation of that easement for a certain period of time,” and at the end of the charge the learned judge said, “Whatever it (defendant) takes from him (plaintiff) in impairment of his easement, is what it gets for itself, and for what it gets for itself, if it does get if and it uses it, it is bound to pay rent in this action.”
By the thirty-first request the defendant asked the court to charge that “the plaintiff is entitled to recover no rental value of the premises described in the complaint, prior to the first of May, 1882, for the reason that during that period it occupied the premises in question itself and suffered no pecuniary loss or damage,” which the court refused to charge, and to which the defendant excepted.
Plaintiff was a corporation and the action was in tort, for the damage done to plaintiff’s property by reason of the unlawful acts of the defendant in appropriating and using plaintiff’s property in Pearl street, and interfering with the plaintiff’s easement in said street. There was no allegation that the relation of landlord and tenant existed between plaintiff and defendant, but it is alleged in the complaint that the said road was built after notice to defendant that the plaintiff forbadethe construction of said railroad through said street, and that it should hold *416 the defendant responsible for any and all damage which might be suffered by it in consequence thereof.
No recovery could be had for use and occupation of plaintiff’s easement in the street. An action for use and occupation can only be sustained on the ground of a subsisting tenancy between the parties (Kiersted v. O. & A. R. R. Co., 69 N. Y. 343.).
It is well settled that a corporation can maintain an action of tort for damages to its property or business, but not for damages to person or character.
In the Shoe and Leather Bank v. Thompson (18 Abb. Pr. 413), the presiding justice says : “ There can be no doubt that a corporation may maintain an action for damages to property or business of the corporation, no matter in what way that injury was effected, whether by trespass, by negligence, or by willful acts of any kind causing damage. The true rule seems to be, as to the power of corporations to maintain actions, that they may do so in all cases necessary for the preservation of their property and rights, and for the recovery of any damage occasioned by the wrongs of others, but not for those damages to persons and character for which an individual may recover unconnected with loss or injury to property.”
Another principle is also established, and that is, in an action for trespass where there is no malice shown, and where no right is involved beyond a mere question of property, vindictive or exemplary damages should not be allowed, and that the measure of damages is a matter of law (Sedgwick Measure of Damages, chap. 18, pp. 453, 454.)'
Also page 36, where it is said, “In all cases growing out of the non-performance of contracts, and in those of infringement of rights or non-performance of duties, created or imposed by law, in which there is no element of fraud, willful negligence, or malice, the compensation recoverable in damages consists solely of the direct pecuniary loss.”
It follows, therefore, that in an action where the recov *417 ery is limited to the damage to property caused by the wrong complained of, and the amount of such damage does not appear, and there is no evidence from which such amount can be ascertained, nominal damages only can be awarded. As was said in Leeds v. Metropolitan Gas Light Co. (90 N. Y. 26), “where the loss is pecuniary, and is present and actual and can be shown, but no evidence is given to show its extent, or from which it can be inferred, the jury can allow nominal damages only.”
Applying these rules to the case at bar, it appears that this is a case in which vindictive or exemplary damages cannot be allowed, and it is evident that under the rules above stated, plaintiff was entitled to recover such damage as was shown by the evidence was actually sustained by it; but if there was no evidence showing the extent of the injury, plaintiff is entitled to nominal damages only.
In this case the only evidence of the damage caused by the trespass, between the time of the construction of the defendant’s road and the first of May, 1882, is evidence of the decrease of the rental value of the property.
In the case of an individual occupying premises where, by the evidence, it appears that a nuisance makes the premises disagreeable and uncomfortable to the occupants, evidence of the depreciation of the rental value caused by the nuisance would be some evidence of the amount of the damage sustained by the owner as showing the extent of the depreciation of the value of the occupation of the property, and this rule of damage was apparently approved in Francis v. Schoellkopf (53 N. Y. 152); but in the case of a corporation,- the fact that the premises occupied by it for its business are made disagreeable and uncomfortable to its agents or employees is of itself no evidence of damage to the corporation, without additional evidence that the fact that the premises were made disagreeable to occupy, caused the corporation additional expense, either in the management or carrying on of its business, or in some other way.
The evidence does not show that if the railroad had *418 not existed in the street, the plaintiff would have received anything for the use of the premises ; that the use of the premises was made any more difficult or expensive to the plaintiff in consequence of the existence of the railroad ;' or, that if the road had not been built, the premises would have been used in any other or different way than they were used.
The fact that its rental value in the market had been depreciated was no pecuniary loss to plaintiff, so long as it continued to use the property for its own purposes. It could make no possible difference to the plaintiff whether the property was worth, during the period named, $500 or $5,000 a year, for the property was not rented.
Nor was there evidence of the rental value of the easement occupied by the defendant. The depreciation of the rental value of the whole property caused by the appropriation of the easement in the street was not evidence from which the jury could ascertain the value of the use of the easement itself.
I think it clear, therefore, that the plaintiff was entitled to nominal damages only,, for the period from August 26, 1818, to May 1, 1882, and that the charge of the court allowing the jury to find for the plaintiff for the damage to the rental value prior to May 1, 1882, and to which the defendant excepted, was erroneous, and that the thirty-first request of the defendant should have been charged by the court.-
As the other exceptions that appear on the record were not pressed by the counsel for the appellant on the argument, or in the brief submitted by him, they have not been examined.
For the reason above given the judgment must be reversed and a new trial ordered, with costs to abide the event, unless the plaintiff stipulates to reduce the judgment to the amount given for damages from May 1, 1882, to October 15, 1883, when the property was sold, with interest thereon. If the plaintiff so stipulate the *419 judgment as modified is affirmed, without costs of this appeal.
Sedgwick, Oh. J., concurred