M & S FURNITURE SALES COMPANY, INC. *v.*
THE EDWARD J. De BARTOLO
CORPORATION

[No. 198, September Term, 1967.]

*Decided April 29, 1968.*

542

The cause was argued before HAMMOND, C. J., and HOR-
NEY, McWILLIAMS, FINAN and SINGLEY, JJ.

*Lawrence F. Rodowsky,* with whom was *Albert P. Hand* on
the brief, for appellant.

*Robert J. Thieblot,* with whom were *Allen, Thieblot &
Hughes* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The question presented by the appeal in this action for libel
is whether the facts stated in the amended declaration in ex-
planation of the alleged libelous conduct were sufficient to show
that the conduct complained of was defamatory *per se.*

The facts as set forth in the original one-count declaration
are to the effect that the plaintiff-appellant (M & S Furniture
Sales Company), the tenant herein, operates a store in the Glen
Burnie Mall Shopping Center; that the defendant-appellee
(Edward J. De Bartolo Corporation), the landlord herein, is
the owner of the shopping center; that the landlord, acting
through employees, ordered the tenant out of the store,[1] at
noon on December 6, 1966 and closed the main entrance with
a screen equipped with an internal lock (ordinarily used as a
protection against burglary when the store was not open for
business) as well as the rear delivery doors by chaining and
padlocking both entrances; that the landlord, by such chaining
and padlocking, which remained throughout the afternoon, pub-
lished and communicated to persons in and about the shopping

---

1. Apparently the tenant and landlord had a dispute as to the
rent, but at the time of the lockout all rent due and payable had
been paid by the tenant to the landlord.

center, including fellow tenants and its prospective customers, that the tenant had not paid its honest debts and therefore the landlord had repossessed the premises; that the publication was untrue and false in that the tenant had performed all obligations required of it under the lease three days prior to the lockout; and that the false publication defamed and libeled the tenant in its business reputation.

The demurrer of the landlord on two grounds—that special damages had to be pleaded because the acts alleged to be defamatory and libelous were not actionable *per se* and that it had not been alleged that third persons understood the conduct to be defamatory—was sustained with leave to amend.

The tenant then filed an amended two-count declaration. The second count, based on trespass *quare clausum fregit,* to which the landlord filed a general issue plea and on which issue has been joined, is not before us on this appeal. The amended first count is the same as the original except that a sentence reading—

> "The fellow tenants of the plaintiff, its prospective customers, its store manager, and persons in and about the Glen Burnie Mall Shopping Center recognized the chains and padlocks as symbols of a creditor's or landlord's execution and understood the publication to impute to the plaintiff a failure to honor business contracts and a failure of business credit."

was included in the innuendo. On the first count the lower court concluded that the conduct of the landlord was not actionable *per se,* but was rather an attempt to allege defamation by innuendo which as such necessitated an allegation of special damages to be actionable and sustained the demurrer to the amended declaration without further leave to amend. This appeal followed.

The tenant contends that the conduct of the landlord, in that it imputed inability to pay its debts, was actionable *per se,* and, in the alternative, that if such conduct was not actionable *per se* it was a question for the jury to determine despite the absence of an allegation of special damages. The landlord in effect contends that its conduct was not defamatory on its face and

therefore was not actionable *per se* and that if its conduct was actionable *per quod,* then, in addition to the innuendo, the tenant should have alleged special damages.

This case is unusual in that the alleged defamation consists entirely of conduct rather than spoken or printed words. So far as we have found there are only four cases directly in point. See the annotation, *Defamation by acts, gestures, pantomime or the like,* in 71 A.L.R.2d 808, § 4 at p. 814. In *American Stores Co. v. Byrd,* 229 Md. 5, 181 A. 2d 333 (1962), however, spoken words combined with conduct were held to be actionable.

It would seem therefore that actions or conduct as well as spoken or printed words could be actionable *per se* or *per quod.* The distinction is based on a rule of evidence and the difference between them lies in the proof of the resulting injury. In the case of words or conduct actionable *per se,* their injurious character is a self-evident fact of common knowledge of which the court takes judicial notice and need not be pleaded or proved. In the case of words or conduct actionable only *per quod,* the injurious effect must be established by allegations and proof of special damage and in such cases it is not only necessary to plead and show that the words or actions were defamatory, but it must also appear that such words or conduct caused actual damage. The cases in this state are collected in 14 M.L.E., Libel and Slander, § 11. See also 33 Am.Jur., Libel and Slander, § 5; 53 C.J.S., Libel and Slander, § 170 b, c.

There may be some question as to whether conduct should be classified as libel or slander but as it makes no difference in this case we will assume, as the parties seem to have done, that it constitutes libel if it was defamatory at all. Whether alleged defamatory action is actionable *per se* is in the first instance a question of law for the court. *Avirett v. State,* 76 Md. 510, 25 Atl. 676 (1893).

As we read the amended declaration, the conduct of the landlord was not defamatory on its face because the ordinary and natural meaning of the conduct did not necessarily import a defamatory meaning. *Avirett v. State, supra,* at p. 521 of 76 Md. The tenant alleged by way of innuendo that the conduct of the landlord was intended and understood to mean that the

tenant did not pay its honest debts and that the landlord had therefore repossessed the premises. As to this, the tenant insists that the innuendo as stated is sufficient in the light of the inducement and colloquium. But as we read them, these parts of the pleadings are of little assistance in this connection. If the conduct amounted to defamation and was published to third persons, it is clear that the lockout had reference to the tenant so that the colloquium is really not in issue here as it was in *Haines v. Campbell,* 74 Md. 158, 21 Atl. 702 (1891). Furthermore, it is difficult to distinguish between the alleged defamatory conduct and the surrounding circumstances. But this is not important here because even considering the surrounding circumstances the lower court concluded, as have we, that the conduct of the landlord as alleged in the innuendo was susceptible of more than one meaning and for that reason could not be considered actionable *per se.* An innuendo cannot enlarge or add to the purport of the words or conduct declared on or properly impute a meaning which the publication either alone or in connection with the inducement or colloquium does not warrant or fairly imply. *Lewis v. Daily News Co.,* 81 Md. 466, 472, 32 Atl. 246 (1895) ; *Geraghty v. Suburban Trust Co.,* 238 Md. 197, 208 A. 2d 606 (1965).

Taking the conduct of the landlord in its ordinary sense, it would not necessarily convey the idea that the tenant had not paid or met his honest debts or obligations. Normally all that the chaining and padlocking would likely indicate is that the store was closed for business. The closing could have been feasible for a number of reasons. There was no allegation that anyone other than the tenant himself had witnessed the employees of the landlord chaining and padlocking the store entrances. Nor is there an allegation of such peculiar circumstances as would give to the conduct of the landlord the particular meaning attributed to it by the tenant as there was in *DeWitt v. Scarlett,* 113 Md. 47, 77 Atl. 271 (1910). In *DeWitt,* where the alleged defamatory action was shown to have acquired a peculiar meaning in the trade, it was held that the publication of the name of a merchant with a blank rating was understood as denoting a lack of credit and therefore actionable

*per se.* Obviously the occurrence here is not comparable to the situation there. No circumstances were alleged which would give the innocuous manner of protecting a stock of goods from burglary a pernicious meaning. The allegations in the declaration do not therefore support the innuendo.

Even if it is assumed that the conduct was such as would support the meaning attributed to it in the innuendo, the question as to whether third parties so understood it would be for the jury, *Haines v. Campbell* and *American Stores Company v. Byrd,* both *supra,* but since the conduct was not defamatory *per se* (that is not necessarily defamatory considering all the circumstances), the settled rule in this state that special damage must be alleged and proved comes into play. *Foley v. Hoffman,* 188 Md. 273, 52 A. 2d 476 (1947) ; *Thompson v. Upton,* 218 Md. 433, 146 A. 2d 880 (1958) ; *Heath v. Hughes,* 233 Md. 458, 197 A. 2d 104 (1964) ; *Maas v. National Casualty Co.,* 97 F. 2d 247 (4th Cir. 1939). Since a court may not infer damage as a result of this conduct, the application of the rule requiring its allegation is clear. *Newbold v. Bradstreet,* 57 Md. 38, 52 (1881).

As special damages were not pleaded, the demurrer was properly sustained.

> *Entry of final judgment pursuant to Maryland Rule 605 a as to count one of declaration affirmed; appellant to pay costs on appeal.*